Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Edwin Mundo Ríos, en su capacidad como Comisionado Electoral del Partido Nuevo Progresista<br><br>    Peticionario<br><br>            v.<br><br>Comisión Estatal de Elecciones; Héctor Jaime Conty Pérez, en su capacidad como Presidente de la Comisión Estatal de Elecciones; Eder Ortiz Ortiz, en su capacidad como Comisionado Electoral del Partido Popular Democrático; Roberto Iván Aponte Berríos, en su capacidad como Comisionado Electoral del Partido Independentista de Puerto Rico; Julio Fontanet Maldonado, en su capacidad como Comisionado Electoral del Movimiento Unión Soberanista; Lillian Aponte Dones, en su capacidad como Comisionada Electoral del Partido del Pueblo Trabajador, y Adrián Díaz Díaz, como Comisionado Electoral de Puertorriqueños por Puerto Rico<br><br>    Recurridos | Certiorari<br><br>2012 TSPR 166<br><br>187 DPR ____ |

Número del Caso: CT-2012-20

Fecha: 3 de noviembre de 2012

Tribunal de Primera Instancia Sala Superior de San Juan

Abogado de la Parte Peticionaria:

        Lcdo. Oscar J. Santamaría Torres

Abogados de la Parte Recurrida:

        Lcdo. José L. Nieto Mingo
        Lcda. Brenda Berríos Morales
        Lcdo. Julio Fontanet Maldonado
        Lcdo. Adrián  Díaz Díaz
        Lcdo. Pedro Ortiz Álvarez
        Lcdo. Jorge Martínez Luciano
        Lcdo. Emil Rodríguez Escudero

Materia: Código Electoral para el Siglo XXI – Entrega de lista de Electores Excluidos ("I-8") para comicios electorales de noviembre 2012

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Edwin Mundo Ríos, en su capacidad como Comisionado Electoral del Partido Nuevo Progresista<br><br>Peticionario<br><br>v.<br><br>Comisión Estatal de Elecciones; Héctor Jaime Conty Pérez, en su capacidad como Presidente de la Comisión Estatal de Elecciones; Eder Ortiz Ortiz, en su capacidad como Comisionado Electoral del Partido Popular Democrático; Roberto Iván Aponte Berríos, en su capacidad como Comisionado Electoral del Partido Independentista de Puerto Rico; Julio Fontanet Maldonado, en su capacidad como Comisionado Electoral del Movimiento Unión Soberanista; Lillian Aponte Dones, en su capacidad como Comisionada Electoral del Partido del Pueblo Trabajador, y Adrián Díaz Díaz, como Comisionado Electoral de Puertorriqueños por Puerto Rico<br><br>Recurridos | CT-2012-020 | Certificación |

PER CURIAM

En San Juan, Puerto Rico, a 3 de noviembre de 2012.

Hoy este Tribunal está llamado a expresarse en cuanto a una controversia latente de naturaleza electoral. En esta ocasión la confianza, transparencia y pulcritud del sistema electoral de Puerto Rico está bajo ataque a tan

solo tres días de que nuestro Pueblo exprese su voluntad en las urnas.

El caso de autos coloca ante nuestra consideración el eminente interés público de salvaguardar la pureza del contenido de las urnas electorales garantizando que solo aquellos electores que ostentan válidamente el derecho al voto acudan a los colegios electorales. La confianza de la ciudadanía en el ejercicio electoral que se llevará a cabo el próximo martes, 6 de noviembre, está en juego.

Nos corresponde interpretar el Manual de Procedimientos para las Elecciones Generales, la Consulta sobre el Estatus Político de Puerto Rico y el Escrutinio General, aprobado el 19 de septiembre de 2012 (Manual de Procedimientos para las Elecciones) para auscultar si en el colegio de electores que votan añadidos a mano debe haber una lista de electores excluidos por estar inactivos (I-8). También debemos resolver si los electores que aparecen en esas listas pueden votar en el colegio de electores que votan añadidos a mano. Luego de analizar con detenimiento las posiciones de las partes junto al derecho aplicable, contestamos la primera interrogante en la afirmativa y la segunda en la negativa.

I

Como es de conocimiento público, las elecciones generales en Puerto Rico tendrán lugar el próximo martes, 6 de noviembre de 2012, junto a una consulta de estatus, conforme a las disposiciones de la Ley Núm. 283-2011, conocida como Ley Habilitadora del Plebiscito.

Ante la preocupación de salvaguardar la pureza de los procesos ante la Comisión Estatal de Elecciones (CEE), el peticionario Comisionado Electoral del Partido Nuevo Progresista (PNP) solicitó a ese organismo que entregara las listas I-8 a todas las unidades y colegios electorales. Las listas I-8 corresponden a las personas no hábiles para votar conforme a las disposiciones del Código Electoral, es decir, aquellos electores inactivos porque no ejercieron su derecho al voto en las elecciones generales de 2008 y no se reactivaron para votar antes del 17 de septiembre de 2012.

Atendida la petición, el 26 de octubre de 2012 la CEE la denegó mediante la Resolución CEE-RS-12-120. Fundamentó su decisión en que la solicitud realizada por el Comisionado del PNP "constituiría una enmienda a la Regla 35 inciso (1) del Reglamento de Elecciones Generales de 2012, que no cuenta con el consentimiento unánime de los comisionados electorales según lo requiere el Artículo 3.004(c) del Código Electoral". Véase, Resolución CEE-RS-12-120, pág. 4.

No conteste con esta determinación, el 27 de octubre de 2012 el Comisionado Electoral del PNP presentó una moción de reconsideración ante la CEE. Esta fue denegada mediante Resolución el 29 de octubre de 2012.

Así las cosas, el 30 de octubre de 2012 la parte peticionaria presentó un escrito de revisión de la Resolución de la CEE ante el Tribunal de Primera Instancia, Sala de San Juan. Ese mismo día, la Juez

Superior Hon. Georgina Candal Segurola dictó una orden mediante la cual señaló vista para el jueves, 1 de noviembre de 2012.

Ante la inminencia de la celebración del evento electoral, el peticionario presentó un auto de certificación intrajurisdiccional ante este Tribunal el 31 de octubre de 2012. Examinado el recurso, denegamos la expedición del auto. Entendimos que nuestra intervención era innecesaria en esa etapa de los procedimientos ya que el foro primario podía resolver el asunto con premura.

A pesar de la deferencia que le brindamos a ese foro, este no resolvió con la celeridad que este asunto amerita. Con ello colocó en riesgo la posibilidad de que el sistema judicial concediera un remedio oportuno. Sentó así las bases para que, por la ausencia de una decisión judicial, la controversia se tornara académica. Nos preocupa la actitud asumida por la Hon. Candal Segurola, pues no es la primera vez que tenemos que intervenir para atender con prontitud una controversia electoral que ella no resolvió a tiempo. Véase, PNP v. CEE Y PPD I, Op. de 3 de abril de 2012, 2012 T.S.P.R. 61, 2012 J.T.S. 74, 185 D.P.R. __ (2012). Ante la urgencia del asunto planteado, no podemos cruzarnos de brazos y hacernos de la vista larga.

Inconforme con la inercia del Tribunal de Primera Instancia, el peticionario acude otra vez ante nos y solicita que, en aras de garantizar la pureza y eficiencia del proceso eleccionario, reconsideremos y resolvamos a favor de permitir que las listas (I-8) sean suministradas

a todos los colegios y unidades electorales para evitar que electores inactivos según las disposiciones de nuestro Código Electoral se presenten a los colegios de electores añadidos a mano y emitan su voto ilegalmente.

El Art. 4.001 del Código Electoral de Puerto Rico para el Siglo XXI, Ley Núm. 78-2011, 16 L.P.R.A. sec. 4031, dispone que todo "asunto o controversia que surja dentro de los cinco (5) días previos a la celebración de una elección deberá notificarse en el mismo día de su presentación y resolverse no más tarde del día siguiente de su presentación". Ante el deber plasmado en ese precepto y la falta de actuación oportuna del foro primario, nos vimos obligados a reconsiderar y expedir el auto de certificación el 2 de noviembre de 2012 a las 3:00 P.M. Asimismo, ordenamos a todas las partes que presentaran sus alegatos no más tarde del 2 de noviembre de 2012 a las 7:00 P.M.

La CEE y el Comisionado Electoral del Partido Popular Democrático (PPD) cumplieron con nuestra orden y presentaron sus alegatos.[1]

II

---

[1] De igual forma, la Comisionada del Partido del Pueblo Trabajador solicitó la desestimación del recurso por falta de jurisdicción. Cimentó su petitorio en que el escrito de reconsideración se le notificó directamente a ella y no a su abogada, Lcda. Brenda Berrios Morales. Véase, Regla 67.2 de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V. Es incorrecta la contención de la Comisionada Electoral del PPT. La licenciada Berrios Morales nunca compareció por escrito como abogada de récord. De hecho, la moción de desestimación es su primera comparecencia en este caso. Por consiguiente, la moción de reconsideración se notificó a la Comisionada Electoral directamente, como contemplan las reglas.

El ordenamiento jurídico de Puerto Rico ~~se~~ le concede jurisdicción a este Tribunal para intervenir en casos que estén pendientes ante los tribunales de jerarquía inferior mediante un auto de certificación intrajurisdiccional. Art. 3.002 de la Ley Núm. 201-2003, Ley de la Judicatura de 2003, 4 L.P.R.A. sec. 24s. El Art. 3.002 de la Ley de la Judicatura de 2003, íd., establece que este mecanismo podrá ser expedido por el Tribunal Supremo de manera discrecional, a solicitud de parte o motu proprio, cuando "se planteen cuestiones noveles de derecho, o se planteen cuestiones de alto interés público que incluyan cualquier cuestión constitucional sustancial" al amparo de la Constitución de Puerto Rico o la Constitución de Estados Unidos. Íd.

Al amparo de esa disposición estatutaria, este Tribunal regularmente ha expedido autos de certificación para resolver casos que por su propia naturaleza requieren una solución urgente. P.I.P. v. E.L.A. et al., res. 6 de julio de 2012, 2012 T.S.P.R. 111, 2012 J.T.S. 124, 186 D.P.R.___ (2012); U.P.R. v. Laborde Torres y otros I, 180 D.P.R. 253, 272-273 (2010). Con mayor frecuencia, se ha utilizado el auto de certificación intrajurisdiccional para adjudicar casos que involucran controversias de derecho electoral. Véase P.I.P. v. E.L.A. et al., supra; McClintock v. Rivera Schatz, 171 D.P.R. 584 (2007); Suárez v. C.E.E. I, 163 D.P.R. 347 (2004).

La controversia expuesta en este caso cumple claramente con todos los requisitos estatutarios y

jurisprudenciales para que este Tribunal expida un auto de certificación intrajurisdiccional. **De entrada, esta controversia surge bajo el contexto particular de que Puerto Rico está a solo tres (3) días de celebrar las Elecciones Generales de 2012.** Como tribunal de última instancia, estamos llamados a adjudicar utilizando como norte los diversos intereses públicos de eminente jerarquía que permean todo este caso.

Por otro lado, nuestro ordenamiento constitucional garantiza que la voluntad política del Pueblo se ejercerá a través del voto libre, directo y secreto. Art. II, Sec. 2, Const. P.R. Tomo 1, ed. 2008, pág. 278. Además, es incuestionable el interés público de garantizar la pulcritud del contenido de las urnas electorales, las cuales son custodias de la voluntad democrática de los ciudadanos de Puerto Rico. Así, es necesario que en este caso el Tribunal de más alta jerarquía se exprese de forma expedita y concienzuda en cuanto a una controversia que en su fondo versa sobre la pureza del proceso electoral del próximo martes. **Todo ello es en aras de garantizar que solo aquellas personas que ostentan válidamente su derecho al voto así lo hagan.** La responsabilidad jurídica final de este Tribunal en cuanto a la controversia de epígrafe es ineludible "[p]ara traer alguna tranquilidad al Pueblo de Puerto Rico". Suárez v. C.E.E. I, supra, pág. 362.

III

Como primer paso en el análisis, este Tribunal debe guardar la usual deferencia a la CEE en aquellos casos en

que la determinación dependa principal o exclusivamente de una cuestión de derecho electoral especializado. Granados v. Rodríguez Estrada I, 124 D.P.R. 1, 20 (1989). Sobre el particular, hemos reiterado que las decisiones de los organismos administrativos merecen deferencia judicial, ya que son quienes cuentan con el conocimiento especializado y la experiencia en los asuntos que se le encomiendan. Comisionado de Seguros v. Real Legacy Assurance, 179 D.P.R. 692, 716-717 (2010); Vélez v. A.R.Pe., 167 D.P.R. 684, 693 (2006); Torres v. Junta de Ingenieros, 161 D.P.R. 696, 708 (2004); T-JAC, Inc. v. Caguas Centrum Limited, 148 D.P.R. 70, 80 (1999).

Además, el Art. 14 del Código Civil, 31 L.P.R.A. sec. 14, establece que cuando "la ley es clara libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu". Cónsono con lo anterior, debemos recordar que "como cuestión de umbral es menester remitirnos al texto de la ley". Báez Rodríguez et al. v. E.L.A., 179 D.P.R. 231, 245 (2010). Ello se debe a que la manifestación clara del legislador es la expresión por excelencia de toda intención legislativa. Íd.; S.L.G. Rodríguez-Rivera v. Bahía Park, 180 D.P.R. 340, 355 (2010); Rullán Rivera v. A.E.E., 179 D.P.R. 433, 444 (2010); Claro TV y Junta Regl. Tel. v. OneLink, 179 D.P.R. 177, 209-210 (2010).

El Art. 6.012 del Código Electoral, supra, 16 L.P.R.A. sec. 4072, dispone que la CEE podrá excluir del Registro a un elector por las causales dispuestas en la

ley. Entre ellas, se encuentra que el elector fue "inactivado" del Registro General de Electores porque no votó en las elecciones generales previas. Íd. Según ese precepto legal, esa inactivación del elector constituye "[u]na exclusión [que] no implicará la eliminación de los datos del elector del Registro General de Electores". Eso obedece a que ese elector puede reactivarse antes de la fecha límite dispuesta para ello. En particular, el Art. 6.015 del Código Electoral, supra, 16 L.P.R.A. sec. 4075, indica que no se autoriza la inscripción de ningún elector cincuenta días previos a la elección.

Por otro lado, la Regla 18 del Reglamento para las Elecciones Generales y el Escrutinio General de 2012, aprobado el 10 de mayo de 2012, ordena a la Oficina de Sistemas de Información y Procesamiento Electrónico de la CEE (OSIPE) producir la lista de electores excluidos para su uso en las subjuntas de unidad y colegios de votación. Asimismo, la Regla 35 de ese Reglamento, íd., establece que en cada centro de votación habrá un colegio para que voten los electores que reclamen su derecho al voto pero no aparecen en la lista de electores activos ni en la de exclusiones. Allí **solo** votarán los electores que no aparecen en las listas electorales **"por errores administrativos de la Comisión…"**. Íd. Véase, además, Art. 9.015 del Código Electoral, supra, 16 L.P.R.A. sec. 4155.

Por eso, la Regla 14.6(d) del Manual de Procedimientos para las Elecciones Generales dispone taxativamente, como señaló el Presidente de la CEE en su

resolución, que un elector "excluido NO PODRÁ VOTAR a menos que haga entrega de algún documento oficial de la CEE que evidencie que puede tener derecho a votar". (Énfasis en el original.) Incluso, **votar añadido a mano sin derecho a hacerlo constituye delito grave de cuarto grado que conlleva como penalidad un término fijo de tres años de cárcel**. Véanse, Art. 12.023 del Código Electoral, supra, 16 L.P.R.A. sec. 4253; Art. 307 del Código Penal de 2012, Ley Núm. 146-2012, 33 L.P.R.A. sec. __.

Además, se debe recordar que toda persona que a sabiendas viole cualquier disposición del Código Electoral será sancionada con pena de reclusión que no excederá de seis (6) meses o multa que no excederá de quinientos (500) dólares o ambas penas a discreción del tribunal. Art. 12.005 del Código Electoral, supra, 16 L.P.R.A. sec. 4235. Igual pena conlleva violar intencionalmente cualquier regla o reglamento aprobado y promulgado por la CEE. Art. 12.007 del Código Electoral, supra, 16 L.P.R.A. sec. 4237.

Como se aprecia, la Asamblea Legislativa tipificó como delito varias conductas dirigidas a cometer fraude electoral. Con la tipificación de esos delitos, se desprende una clara política pública por parte del legislador de combatir el fraude electoral imponiendo responsabilidad penal.

IV

En su resolución, la CEE indicó que la petición del Comisionado Electoral del PNP para que en cada colegio se distribuya una lista I-8 constituía una enmienda a la

Regla 35 del Reglamento para las Elecciones Generales y el Escrutinio General de 2012. Luego de auscultar el ordenamiento jurídico pertinente, resulta forzoso concluir que la interpretación de la CEE es errónea. Por el contrario, el reglamento ordena la distribución de las listas de electores excluidos en los centros de votación que se habilitarán el próximo 6 de noviembre de 2012. Por definición, eso incluye los electores inactivos que aparecen en las listas I-8. Estos también son electores excluidos del registro electoral. Al respecto, la Regla 18 del Reglamento antes citado, íd., ordena que la OSIPE reproduzca las listas de electores **excluidos** para uso de las subjuntas de unidad y colegios de votación. Cónsono con lo anterior, el Art. 6.012 del Código Electoral, supra, ordena a la CEE **excluir** del Registro Electoral a los electores que no votaron en las pasadas elecciones. Esos electores se encuentran agrupados en las listas I-8.

Según se desprende de la Sec. 14.6(d) del Manual de Procedimientos para las Elecciones, ningún elector que aparezca en la lista de excluidos puede votar en un colegio de electores añadidos a mano **sin presentar un documento oficial expedido por la propia CEE que evidencie que tiene derecho a votar**. No es suficiente que un elector excluido o inactivado se presente a votar sin evidencia oficial de que tiene derecho a ello.

Así pues, resulta espinoso concebir cómo se puede cumplir con el mandato legislativo que recoge el Art. 6.012 del Código Electoral, íd., sin que los funcionarios

de los centros de votación tengan las listas I-8 a su disposición. Sin lugar a dudas, esas listas son herramientas de trabajo necesarias para que estos funcionarios puedan ejercer sus deberes ministeriales delegados por ley. Véase, en general, Secs. 7.1 a 16.2 del Manual de Procedimientos para las Elecciones.

Las partes recurridas señalan que en el pasado nunca se han incluido los electores inactivos en la lista de electores excluidos. Si bien la interpretación de la agencia encargada de poner en vigor su reglamento merece deferencia, eso no convalida una interpretación que se aparte del texto de la ley y del propio reglamento. Los electores inactivos son una categoría de electores excluidos de las listas de votación. No estamos cambiando las reglas para estas elecciones. Lo que sucede es que el uso y costumbre no justifica apartarse del texto del reglamento.

Debemos recordar que los colegios de electores añadidos a mano existen exclusivamente para garantizar el derecho al voto de electores **activos e inscritos válidamente** pero que, por errores administrativos de la CEE, su información registral no aparece en las listas de electores o está con errores. Véanse, Art. 9.015 del Código Electoral, supra; Regla 35 del Reglamento para las Elecciones Generales, supra. Por ende, resulta claro que estos colegios de electores añadidos a mano no se diseñaron con el propósito ilegal y delictivo de permitir el voto de electores excluidos o inactivados. Es decir, el

colegio de añadidos a mano no existe para que vote quien no tiene derecho a hacerlo.

V

Por último, es menester aclarar que la controversia que atendemos hoy es muy distinta a la que discutió el Tribunal Federal de Apelaciones para el Primer Circuito en Colón Marrero et al. v. Conty Pérez et al., Op. de 2 de noviembre de 2012, No. 12-2145. Allí se resolvió que la National Vote Registration Act (NVRA), 42 U.S.C. sec. 1973gg-1(4), por sus términos no aplica a Puerto Rico. Colón Marrero et al. v. Conty Pérez et al., supra, pág. 6. El foro federal sostuvo que la parte allí demandante sí presentó un caso con mérito en cuanto a la Help America Vote Act of 2003 (HAVA), 42 U.S.C. sec. 15541, en lo que respecta a la candidatura de comisionado residente. Colón Marrero et al. v. Conty Pérez et al., supra, pág. 8. Sin embargo, aclaró que

> es una pregunta abierta y difícil –que la demandante no discutió- si la HAVA proveería un fundamento para que un tribunal estatal ordene la reinstalación de votantes en las elecciones del Estado Libre Asociado. En la medida en que el lenguaje de nuestra orden de 11 de octubre sugirió que nuestra determinación también se extendía al derecho de la demandante a votar en las elecciones locales de Puerto Rico, ese lenguaje no reflejó ni refleja la visión de la mayoría [del tribunal]. Íd., pág. 9. (Traducción nuestra.)[2]

_____

[2] El texto original en inglés dispone: "[I]t is an open and difficult question --one not addressed by plaintiff-- whether HAVA would provide a basis for a federal court ordering the reinstatement of voters in Commonwealth elections. To the extent that the language of the October 11 order suggested that our determination also extended to plaintiff's right to vote in Puerto Rico's local

En otras palabras, el tribunal federal rechazó el uso de la HAVA para obligar a la CEE a reactivar en esta elección de 2012 a los electores excluidos del registro electoral porque no votaron en las elecciones generales de 2008. De esa forma, es errada la postura del Comisionado del PPD que sostiene lo contrario. Como muy bien señala la CEE, con la "determinación del Tribunal de Apelaciones para el Primer Circuito, es evidente que en este momento nadie cuestiona que los electores que no votaron en las elecciones generales del [sic] 2008... no pueden votar en las Elecciones Generales del [sic] 2012". Alegato de la CEE, pág. 3. De hecho, el Comisionado del PPD nos informa que el Tribunal Federal de Apelaciones para el Primer Circuito emitió una orden ayer, 2 de noviembre de 2012, en la que denegó una moción de emergencia que presentó la allí demandante para que se le permitiera votar el próximo martes.

Como se aprecia, el Tribunal Federal de Apelaciones para el Primer Circuito atendió una controversia pura de derecho federal. En específico, se le planteó la aplicación de las dos leyes federales discutidas a las elecciones de este territorio. Muy distinta es la encomienda que atendemos hoy. Nuestra labor en este caso es interpretar nuestra ley electoral estatal y los reglamentos aplicables para resolver la controversia que nos ocupa.

_____

elections, that language did not and does not reflect the view of the majority".

VI

Por los fundamentos antes expuestos, se declara con lugar la moción de reconsideración que presentó la parte peticionaria. En consecuencia, se ordena al Presidente de la Comisión Estatal de Elecciones, Hon. Héctor Conty Pérez, que **inmediatamente** imparta instrucciones para que se proceda con la impresión de las listas I-8. Además, se ordena que esas listas sean distribuidas a todas las subjuntas de las unidades y los centros de votación que estarán activos el 6 de noviembre de 2012.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Edwin Mundo Ríos, en su capacidad como Comisionado Electoral del Partido Nuevo Progresista<br><br>Peticionario<br><br>v.<br><br>Comisión Estatal de Elecciones; Héctor Jaime Conty Pérez, en su capacidad como Presidente de la Comisión Estatal de Elecciones; Eder Ortiz Ortiz, en su capacidad como Comisionado Electoral del Partido Popular Democrático; Roberto Iván Aponte Berríos, en su capacidad como Comisionado Electoral del Partido Independentista de Puerto Rico; Julio Fontanet Maldonado, en su capacidad como Comisionado Electoral del Movimiento Unión Soberanista; Lillian Aponte Dones, en su capacidad como Comisionada Electoral del Partido del Pueblo Trabajador, y Adrián Díaz Díaz, como Comisionado Electoral de Puertorriqueños por Puerto Rico<br><br>Recurridos | CT-2012-020 | Certificación |

SENTENCIA

En San Juan Puerto Rico a 3 de noviembre de 2012.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte de la presente Sentencia, se declara con lugar la moción de reconsideración que presentó la parte peticionaria. En consecuencia, se ordena al Presidente de la Comisión Estatal de Elecciones, Hon. Héctor Conty Pérez, que **inmediatamente** imparta instrucciones para que se proceda con la impresión de las listas I-8. Además, se ordena que esas listas sean distribuidas a todas las subjuntas de las

unidades y los centros de votación que estarán activos el 6 de noviembre de 2012.

Notifíquese inmediatamente a las partes por correo electrónico, <u>fax</u> o teléfono y personalmente a través de la Oficina de Alguaciles de este Tribunal.

Lo acordó y ordena el Tribunal, y lo certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió una opinión disidente a la cual se unieron el Juez Presidente señor Hernández Denton y la Jueza Asociada señora Fiol Matta.


                    Aida Ileana Oquendo Gralau
                    Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Edwin Mundo Ríos, en su capacidad como Comisionado Electoral del Partido Nuevo Progresista<br><br>Peticionario<br><br>v.<br><br>Comisión Estatal de Elecciones; Héctor Jaime Conty Pérez, en su capacidad como Presidente de la Comisión Estatal de Elecciones; Eder Ortiz Ortiz, en su capacidad como Comisionado Electoral del Partido Popular Democrático; Roberto Iván Aponte Berríos, en su capacidad como Comisionado Electoral del Partido Independentista de Puerto Rico; Julio Fontanet Maldonado, en su capacidad como Comisionado Electoral del Movimiento Unión Soberanista; Lillian Aponte Dones, en su capacidad como Comisionada Electoral del Partido del Pueblo Trabajador, y Adrián Díaz Díaz, como Comisionado Electoral de Puertorriqueños por Puerto Rico<br><br>Recurridos | CT-2012-20 |

Opinión disidente emitida por la Juez Asociada señora Rodríguez Rodríguez a la que se unen el Juez Presidente señor Hernández Denton y la Jueza Asociada señora Fiol Matta

San Juan, Puerto Rico, a 3 de noviembre de 2012

> "Permitir que los que ejercen el poder determinen

la exclusión del derecho al voto de sus adversarios es invitar a la destrucción de la democracia. Por ello la **independencia de los tribunales** que revisan los asuntos electorales es de vida o muerte en una democracia".[3]

A sólo horas de comenzar el evento que cada cuatrienio marca nuestro renovado compromiso democrático, la mayoría de este Tribunal arroja sombras sobre su legitimidad, al cambiar, sin base jurídica alguna, las reglas de juego. Con este dictamen, se contribuye a la turbidez sobre los resultados de esta elección y se lacera, de paso, la confianza ciudadana en esta institución. Confianza, que es también baluarte democrático porque se asienta sobre la base de que somos prudentes e imparciales en el ejercicio del vasto poder que la Constitución del Estado Libre Asociado de Puerto Rico nos ha delegado. El Juez Brandeis, con sabiduría, aseveró lo siguiente sobre el Tribunal Supremo de Estados Unidos, y bien valdría que se asumiera su admonición: "The most important thing we do is not doing." A. Bickel, *The Least Dangerous Branch* 71 (1961).

Disiento del curso que traza la mayoría por varias razones: primero, porque no se basa en una interpretación coherente del *Código Electoral de Puerto Rico para el*

---

[3] Cámara de Representantes, *Informe Positivo sobre el Sustitutivo del Proyecto de la Cámara 1863*, 8 de marzo de 2010, pág. 17 (Ponencia del Lcdo. Héctor Luis Acevedo).

*Siglo XXI*, ni del *Reglamento para las Elecciones Generales y el Escrutinio General de 2012* y el *Manual de Procedimiento para las Elecciones Generales, la Consulta sobre el Estatus Político de Puerto Rico y el Escrutinio General*; segundo, porque es contraria al principio legal que propone que las interpretaciones de los entes administrativos merecen nuestra deferencia; tercero, porque legislamos sin que este Tribunal haya dictaminado que se han violado derechos de rango constitucional; cuarto, porque tan tardío dictamen es irreflexivo; quinto, porque el mandato de la mayoría se asienta sobre unos argumentos del peticionario de posible fraude electoral, asunto sobre el cual no hay un ápice de prueba en el récord; sexto, porque tal cual nos indica la Comisión Estatal de Elecciones (C.E.E.), la orden que hoy emite la mayoría trastoca el cuidadoso esquema establecido y que históricamente se ha utilizado para la votación, proceso éste cuya esencia es evitar confrontaciones en el colegio de votación.

Estamos ante otro esfuerzo más de la mayoría para limitar los derechos de los ciudadanos, en este caso uno de los más preciados en la democracia: el derecho al voto. La acción de la mayoría abre las puertas las puertas a la supresión de electores ("voter suppression") válidamente inscritos. En la actualidad este fenómeno se está viviendo en Estados Unidos.

Innumerables estados (*i.e.,* Ohio, North Carolina, Florida, Wisconsin, Arizona, Mississippi, Alabama, Texas,

etc.) y sus funcionarios administrativos, han promulgado medidas dirigidas a impedir, restringir o limitar el sufragio cuyo efecto es intimidar a votantes que no son afines a su partido político. Véanse, entre otros, Alexander Keyssar, *Voter Suppression Returns, Voting rights an partisan practices,* Harvard Magazine, July-August (2012); Jane Mayer, *The Voter-Fraud Myth, The man who stoked fear about impostors at the polls*, The New Yorker, October 29, 2012. Tan serio es el problema, que el Departamento de Justicia de Estados Unidos ha asumido un rol proactivo revisando e impugnando judicialmente varias de estas medidas. Eric Holder, mensaje pronunciado en el Lyndon Baines Johnson Presidential Library and Museum, 13 de diciembre de 2011.

En un estudio del Brennan Center for Justice, J. Levitt concluye:

> Allegations of widespread voter fraud, however, often prove greatly exaggerated. It is easy to grab headlines with a lurid claim ("Tens of thousands may be voting illegally!"); the follow-up — when any exists — is not usually deemed newsworthy. Yet on closer examination, many of the claims of voter fraud amount to a great deal of smoke without much fire. The allegations simply do not pan out. **These inflated claims are not harmless. Crying "wolf" when the allegations are unsubstantiated distracts attention from real problems that need real solutions. […] Moreover, these claims of voter fraud are frequently used to justify policies that do not solve the alleged wrongs, but that could well disenfranchise legitimate voters.**

J. Levitt, *The Truth About Voter Fraud*, pág. 3 (2007) (énfasis suplido).

El fenómeno antes descrito se ejemplifica en la controversia de autos y la mayoría de este Foro se hace partícipe de ello.

Una mayoría de este Tribunal parece aplicar un enfoque circunstancial en lugar de estatutario y reglamentario a la controversia de autos. A sólo tres días de los próximos comicios electorales la "pulcritud del sistema electoral de Puerto Rico está bajo ataque", Opinión Per Curiam, pág. 1, y lamentablemente la mayoría contribuye a este embate con su orden emitida. "Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell v. González*, 549 U.S. 1, 4-5 (2006). Es por ello que no es aconsejable dictar una orden como la de hoy a sólo horas de una elección. *Colón-Marrero v. Conty Pérez*, Civil No. 12-2145, slip op., Nov. 2, 2012. Nuevamente, la confianza de la ciudadanía en este Foro como último recurso para vindicar el derecho al voto y proveer objetivamente de un remedio justo y equitativo, queda irremediablemente mancillada.

Hoy se desfigura el estado de derecho. Somos testigos de una interpretación forzada, torcida, y, repetimos, circunstancial que no se ajusta a las exigencias ético-jurídicas de un tribunal. El proceder mayoritario permite que otros concluyan que se ingenia una solución levemente articulada que ante peticionarios anónimos, no se idearía. Todo lo cual es motivo de honda

preocupación ante el advenimiento de unos nuevos comicios electorales.

En la controversia de autos, hasta la mirada párvula de quien tiene a su alcance tanto el *Código Electoral de Puerto Rico para el Siglo XXI*, 16 L.P.R.A. Secs. 4001 *et al.*, como el *Reglamento para las Elecciones Generales y el Escrutinio General de 2012* y el *Manual de Procedimiento para las Elecciones Generales, la Consulta sobre el Estatus Político de Puerto Rico y el Escrutinio General*, podría concluir que el comisionado electoral del Partido Nuevo Progresista (P.N.P), aquí peticionario, no le asiste la razón.

**I**

La controversia de autos es sencilla, tal cual su solución, puesto que el Código Electoral y el Reglamento para las Elecciones Generales y el Escrutinio General de 2012 ("Reglamento para las Elecciones Generales") disponen claramente de un curso a seguir del que se ha distanciado este Tribunal en el día de hoy. El P.N.P. solicita que autoricemos que las listas de electores inactivos en el Registro Electoral (conocidas como "listas de electores inactivos I-8") sean entregadas a todas las unidades y colegios electorales donde van a votar los electores que utilizan el procedimiento de voto añadido a mano.[4] Tal pretensión persigue que los

---

[4] Recordemos que los electores inactivos son aquéllos que dejaron de votar en la elección general anterior. Cód. Electoral Art. 6.012, 16 L.P.R.A. Sec. 4072. No deben confundirse éstos con los electores que aparezcan en las

funcionarios a cargo de estos colegios no les permitan a los electores inactivos I-8 votar de conformidad con el procedimiento establecido para los colegios especiales de votos añadidos a mano, a pesar de que dichos electores quizás aparezcan en tales listas I-8 por error administrativo de la Comisión.

Vista la petición del comisionado electoral del P.N.P. ante la propia Comisión Estatal de Elecciones (C.E.E.), no hubo unanimidad entre los comisionados electorales. Por tal motivo, el presidente de la C.E.E., Héctor Conty Pérez, emitió la Resolución CEE-12-120 el 26 de octubre de 2012. En ésta concluyó que ante la falta de unanimidad para enmendar el Reglamento para las Elecciones Generales en lo referente a los colegios especiales de electores añadidos a mano, no procedía la solicitud del P.N.P. Basó su determinación en que el Artículo 3.004 del Código Electoral dispone que toda enmienda al Reglamento que se adopte a menos de noventa días antes de las elecciones generales, **requerirá la participación de todos los comisionados electorales y el voto unánime de éstos**. 16 L.P.R.A. Sec. 4014.

El señor Conty Pérez esbozó el estado de derecho vigente y subrayó que la Regla 35 del Reglamento para las Elecciones Generales claramente establece que a cada colegio especial de electores añadidos a mano le serán enviadas solamente las **listas de votantes activos** y las

---

listas de excluidos, a quienes les aplican otros criterios. *Id.;* 16 L.P.R.A. Sec. 4077.

**listas de votantes excluidos.** Al no disponer que se deban enviar las listas de votantes inactivos I-8, la petición del P.N.P. constituiría una enmienda a dicho Reglamento. Además de esto, el Presidente de la C.E.E. fue muy enfático al expresar que los electores inactivos no tienen derecho a votar y que aquéllos que puedan tener derecho a votar y lo hagan mediante el mecanismo de votos añadidos a mano, deberán seguir los procedimientos en ley. Concluyó diciendo que la inobservancia de esos procesos o el intento de fraude de quienes no tuvieren derecho a votar, conllevaría las respectivas sanciones penales que la ley dispone.

## II

### A

Lo que está bajo nuestra consideración en esta controversia son las disposiciones del Código Electoral de Puerto Rico y el Reglamento para las Elecciones Generales, un reglamento que aprobaron los propios comisionados electorales que conforman la C.E.E. Cód. Electoral Art. 3.001, 16 L.P.R.A. Sec. 4011.

En innumerables ocasiones hemos sido consistentes en que las conclusiones e interpretaciones que hagan los organismos administrativos sobre las leyes y reglamentos que administran merecen gran consideración y respeto. Por tanto, en tales circunstancias la revisión judicial se limita a determinar si la agencia actuó arbitraria o ilegalmente o en forma tan irrazonable que su actuación constituyó un abuso de discreción. *Rebollo v. Yiyi*

*Motors*, 161 D.P.R. 69, 76 (2004); *Rivera Concepción v. A.R.P.E.*, 152 D.P.R. 116, 122 (2000).

En otras palabras, en estos casos el criterio a aplicarse no es si la decisión administrativa es **la más razonable** o **la mejor** según el parecer del foro judicial. Todo lo contrario, el criterio rector que esta Curia ha definido es si la determinación administrativa, en la interpretación de los reglamentos y las leyes que le incumbe implementar, es razonable. *Rivera Concepción*, 152 D.P.R. en la pág. 124. Ello no constituye una abdicación al poder revisor de los tribunales, sino una deferencia basada en el concepto de la razonabilidad del proceder administrativo. *Véase Yiyi Motors*, 161 D.P.R. en la pág. 78.

Además, es "un principio firmemente establecido que las decisiones de las agencias administrativas tienen a su favor una **presunción de legalidad y corrección**, la cual deben respetar los tribunales mientras la parte que las impugna **no produzca suficiente evidencia para derrotarlas**". *Id.* pág. 77 (énfasis suplido). En la controversia ante nosotros, la parte peticionaria no ha logrado rebatir esa presunción. Mucho menos ha podido explicar cómo o por qué no debemos seguir, con relación a los Artículos 3.004, 6.012 y 9.015 del Código Electoral, el **principio de hermenéutica legal** del Artículo 14 del Código Civil de Puerto Rico que tanto profesamos. Entiéndase, el principio de que cuando la ley es clara, no se debe menospreciar su letra. Cód. Civ. Art. 14, 31

L.P.R.A. Sec. 14; *S.L.G. Rodríguez Rivera v. Bahía Park*, 180 D.P.R. 340, 355 (2010) (Martínez Torres, J., Op. Mayoritaria); *Const. José Carro v. Mun. Aut. de Dorado*, 2012 T.S.P.R. 114, en la pág. 13 (Rivera García, J., Op. Mayoritaria); *Pagán Santiago y otros v. Adm. Sistemas de Retiro*, 2012 T.S.P.R. 68, en la pág. 16 (Pabón Charneco, J., Op. Mayoritaria).

La mayoría de este Foro intenta convencer de que el Artículo 6.012 del Código Electoral es claro al equiparar a los electores inactivos con los excluidos. Sin embargo, la claridad opera en contra de su contención, como veremos a continuación.

**B**

La Constitución del Estado Libre Asociado de Puerto Rico establece un derecho al sufragio universal, lo que significa un principio amplio de inclusión en la participación en los procedimientos electorales y colectivos. Const. P.R., Preámbulo & Art. II, Sec. 2; *P.N.P. v. De Castro Font*, 172 D.P.R. 883 (2007). Ese derecho está reglamentado por medio de leyes especiales como el Código Electoral, que reconoce la importancia del ejercicio del voto. Tanto es así que la ley establece una prohibición al rechazo, a la cancelación, a la invalidación o anulación del elector calificado a su derecho al voto. Cód. Electoral Art. 6.006, 16 L.P.R.A. Sec. 4066. Examinemos a continuación los artículos pertinentes del Código Electoral para resolver la controversia de autos. Comencemos aclarando la

interpretación errónea que hace la mayoría de la diferencia entre los electores inactivos y los excluidos, al equipararlos como una sola clasificación.

La Ley Electoral de 1977 establecía en su art. 2.012 que "[s]i un elector dejare de votar en una elección general su nombre será **excluido** de las listas electorales". 16 L.P.R.A. Sec. 3062 (énfasis suplido) (derogado). Bajo esa disposición estatutaria derogada por la actual Asamblea Legislativa, la interpretación que hoy la mayoría de este Tribunal le confiere al nuevo Código Electoral podía haber prevalecido. Sin embargo, la intención legislativa cuando se dio a la tarea de crear el Código Electoral de Puerto Rico para el Siglo XXI fue cambiar dicha expresión de la ley. El Proyecto de la Cámara presentado originalmente buscaba enmendar el Código Electoral, sin el efecto de derogar todas sus disposiciones.

Posteriormente es que la Asamblea Legislativa decidió en efecto presentar y aprobar un Código Electoral nuevo y distinto por completo al anterior. El primer proyecto de ley disponía en la sección que hoy genera esta controversia, la siguiente propuesta de enmienda:

> Si un elector dejare de votar en una elección general su **[nombre]** *registro o expediente* será **[excluido de las listas electorales]** *inactivado en el Registro General de Electores. La Comisión podrá excluir del mencionado registro a aquellos electores que por causales dispuestas en esta Ley o reglamento así se establezca. Una exclusión no implicará la eliminación de los datos del elector del Registro General de Electores.*

P. de la C. 1863.

Como se puede apreciar del texto citado, lo enfatizado en corchetes es lo que el proyecto de la cámara propuso eliminar y el texto en bastardillas lo que se propuso aprobar. El texto citado despeja cualquier duda con respecto a la intención de la Asamblea Legislativa de cambiar el tratamiento a los electores que dejaran de votar en una elección general. Anteriormente dicho elector se tenía que **excluir** de las listas electorales, mas la enmienda propuesta sólo buscó "inactivarlo" en el Registro General de Electores.

Tras ello, la Comisión de Gobierno de la Cámara de Representantes presentó un Proyecto Sustitutivo de la Cámara al P. de la C. 1863. Ya en este proyecto la Asamblea Legislativa vislumbró la eliminación del antiguo Código Electoral, para aprobar y adoptar un nuevo Código Electoral. En ese proyecto sustitutivo, la Asamblea Legislativa propuso, con respecto a la disposición estatutaria en controversia en este caso, el siguiente texto:

> Si un elector dejare de votar en una elección general su registro o expediente **podrá ser inactivado** en el Registro General de Electores. La Comisión podrá excluir del mencionado registro a aquellos electores que por causales dispuestas en esta Ley o reglamento así se establezca. Una exclusión no implicará la eliminación de los datos del elector del Registro General de Electores.

Sustitutivo de la Cámara al P. de la C. 1863.

El texto propuesto por el proyecto sustitutivo, nuevamente presenta un trato distinto a lo que establecía la Ley Electoral de 1977. La Asamblea Legislativa

propuso **inactivar** al elector, un tratamiento claramente diferente al de la **exclusión** que existía antes.

Por último, el texto aprobado por la Asamblea Legislativa y firmado por el Gobernador como el Código Electoral de Puerto Rico para el Siglo XXI dispone lo siguiente en su Artículo 6.012:

> Si un elector dejare de votar en una elección general su registro o expediente **será inactivado** en el Registro General de Electores. La Comisión podrá excluir el mencionado registro a aquellos electores que por causales dispuestas en esta Ley o reglamento así se establezca. Una exclusión no implicará la eliminación de los datos del elector del Registro General de Electores.

Código Electoral, Art. 6.012, 16 L.P.R.A. Sec. 4072.

La letra de la ley y la intención legislativa no pueden ser más claras hacia la distinción entre inactivo y excluido. Con intención precisa la Asamblea Legislativa decidió eliminar del verbo **excluir** a los votantes que no participaran en unas elecciones generales, para así darles un tratamiento distinto y solamente catalogarlos como **inactivos** en el Registro General de Electores. La mayoría parece haber leído la Ley Electoral de 1977 para justificar su interpretación errada, puesto que emite una falsa enunciación del estado de derecho al decir que los electores inactivos "también son electores excluidos del registro electoral". Opinión Per Curiam, pág. 11. La letra de la ley es clara: los electores que aparecen en las listas I-8 son electores **inactivos, mas no excluidos.** Aunque el Artículo 6.012 se

exprese sobre ambos en un mismo párrafo, ello no los equipara.

El tratamiento de **exclusión** se limitó a "aquellos electores que por causales dispuestas en esta Ley o reglamento así se establezca". Cód. Electoral, Art. 6.012, 16 L.P.R.A. Sec. 4072. La pregunta que debemos hacernos es: ¿cuáles son esas causales? Éstas, pues, son los **votantes ausentes o adelantados**, que al día de las elecciones ya han emitido su voto y, por consecuencia, no pueden votar ese día y se excluyen del Registro General de Electores para evitar el doble voto y el verdadero fraude electoral. Además de esos electores, el Artículo 6.017 del Código Electoral dispone que serán **excluidos** del Registro General de Electores aquellas personas **recusadas** por las causales que dicho artículo provee. 16 L.P.R.A. Sec. 4077. Entre esas causales para recusación, **no** se encuentran los electores que no hayan votado en las elecciones generales anteriores.

Visto el historial legislativo referente al Artículo 6.012 del Código Electoral, resulta forzoso concluir que la intención legislativa fue no brindarle a los electores que dejaran de votar en una elección general el mismo trato que a los electores excluidos. La Asamblea Legislativa separó ambas clasificaciones, contrario a lo que la mayoría de este Tribunal argumenta en un intento forzado de decir por fíat judicial lo que la Rama Legislativa claramente no dijo.

Resulta contradictorio que a pesar de las expresiones que este Tribunal recientemente ha hecho en cuanto al principio de separación de poderes y de evitar que la Rama Judicial asuma un rol legislativo cuando la intención legislativa es clara e inequívoca, hoy la mayoría de esta Curia que se ha manifestado así incida en su propia crítica. *Lozada Sánchez v. J.C.A.*, 184 D.P.R. 898 (2012) (Martínez Torres, J., Opinión Mayoritaria); *S.L.G. Rodríguez Rivera v. Bahía Park*, 180 D.P.R. 340, 355 (2010) (Martínez Torres, J., Opinión Mayoritaria); *Cía. Turismo de P.R. v. Mun. de Vieques*, 179 D.P.R. 578, 593-604 (2010) (Pabón Charneco, J., Opinión Disidente); *Pueblo v. Rivera Santiago*, 176 D.P.R. 559 (2009) (Pabón Charneco, J., Opinión Mayoritaria). La falta de consistencia de la mayoría en sus propios postulados parece ser aleatoria y hasta circunstancial.

Aclarado que sí hay una distinción entre elector inactivo y elector excluido, revisemos las demás disposiciones del Código Electoral y del Reglamento para las Elecciones Generales atinentes a esta controversia.

El Artículo 9.015 del Código Electoral establece que:

> En cada precinto, centro de votación o unidad electoral conforme disponga la Comisión se establecerá un colegio especial para electores que no hayan sido incluidos en las listas de votantes y reclamen su derecho al voto. La Comisión establecerá mediante reglamento los requisitos y procedimientos para este colegio especial donde los electores reclamen que no aparecen incluidos en la lista de votantes correspondiente a su centro de

votación **por errores administrativos atribuibles a la Comisión.**

Cód. Electoral Art. 9.015, 16 L.P.R.A. Sec. 4155 (énfasis suplido).

Además, el Artículo 9.042 dispone que "[l]as personas que reclamen su derecho a votar pero no figuren en las listas de votantes podrán votar añadidos a mano según el procedimiento que establezca la Comisión por Reglamento". *Id.* Art. 9.042, 16 L.P.R.A. Sec. 4182. En lo pertinente, la Regla 35 del Reglamento para las Elecciones Generales dispone:

> En cada centro de votación se establecerá un colegio especial ... para que voten solamente los electores del precinto que reclamen su derecho a votar y no figuren en **las listas de votación ni en las de exclusiones.** Podrán ejercer su derecho al voto en este colegio ... solamente los electores que **por errores administrativos** de la Comisión no aparezcan en las listas electorales.

Reglamento para las Elecciones Generales, R. 35 (énfasis suplido).

Como correctamente señaló el señor Conty Pérez en la resolución de la C.E.E., esta Regla 35 no faculta la entrega de las listas de votantes inactivos I-8 a los colegios especiales de votos añadidos a mano. Veamos ahora más profundamente qué listas son las que hay que enviar a los centros de votación el día de las elecciones generales.

Primeramente, notamos que el Artículo 9.013 del Código Electoral establece que la C.E.E. entregará a cada partido político que postule un candidato a gobernador una copia de la **lista de votantes** a ser usada el día de las Elecciones Generales. 16 L.P.R.A. Sec. 4153. Por su

parte, el Artículo 2.003 del Código Electoral define la **lista oficial de votantes** como el "documento impreso o electrónico preparado por la Comisión que incluye los datos requeridos por ley de los **electores hábiles** asignados a un colegio de votación para una elección en particular". 16 L.P.R.A. Sec. 4003 (41).

Del texto claro de la propia ley se desprende que los partidos no tendrán el día de las elecciones las listas de electores inactivos I-8 que pretende el P.N.P. obtener en esta ocasión. Visto esto, más que una enmienda al Reglamento para las Elecciones Generales, la pretensión de la parte peticionaria constituye una enmienda al texto claro del Código Electoral sin el debido procedimiento legislativo que provee la Constitución de Puerto Rico. Conceder el remedio solicitado por el P.N.P. diáfanamente puede calificarse como un acto de enmienda legislativa por fíat judicial, sin justificación plausible para ello.

La Regla 18 del Reglamento para las Elecciones Generales dispone que se entregarán a los partidos políticos: las listas de los votantes; copia electrónica del Registro General de Electores; lista alfa unidad de **electores activos**; lista alfa precinto de **electores activos**; lista alfa municipal de **electores activos**; y tarjetas informativas para todos los **electores hábiles**. Además, la Regla 18 establece que se entregarán a las sub-juntas de unidad y colegios de votación, entre otras

no pertinentes a esta controversia, las listas de **electores excluidos**.

La Mencionada Regla 18 no dispone nada sobre la entrega de las listas de electores inactivos I-8 a los partidos políticos ni a las sub-juntas de unidad o colegios de votación. Por consiguiente, acceder a la petición del P.N.P. no tan sólo constituye una enmienda a la Regla 35 del Reglamento para las Elecciones Generales, sino también a esta Regla 18. Por ser una enmienda a realizarse dentro del intervalo de noventa días previo a los comicios electorales del 6 de noviembre de 2012, se requería el voto unánime de los comisionados electorales. Cód. Electoral Art. 3.004, 16 L.P.R.A. Sec. 4014. Evidentemente ello no sucedió.

## III

La pretensión del comisionado electoral del P.N.P. es que autoricemos el envío de las listas de electores inactivos I-8 a los colegios electorales para que los funcionarios de los colegios especiales puedan **rechazar al momento** a aquellos electores inactivos que se presenten a votar el próximo 6 de noviembre. Esta petición que hoy adopta la mayoría de este Tribunal claramente violaría el derecho al voto de muchos ciudadanos.

Tanto el P.N.P. en su recurso de certificación intrajurisdiccional, como el Artículo 9.015 del Código

Electoral y la Regla 35 del Reglamento para las Elecciones Generales expresan que podrán ejercer el derecho al voto en los colegios especiales de votos añadidos a mano aquellas personas cuyos nombres no aparezcan en las listas electorales debido a **errores administrativos atribuibles a la Comisión**. 16 L.P.R.A. Sec. 4155.

El andamiaje legal electoral de Puerto Rico reconoce que las listas electorales pueden contener errores administrativos al no incluir en éstas a aquellos electores que aunque siguieron el trámite requerido para quedar inscritos antes de la fecha límite, sus nombres están ausentes de las listas de electores hábiles o aún aparecen en listas de inactivos. Como garantes del derecho constitucional al sufragio de esos electores, no debemos permitir que unos funcionarios electorales, movidos por la pasión que produce el día de las elecciones o por otros motivos, rechacen el ejercicio del voto de aquellos que tengan que votar en un colegio especial de votos añadidos a mano por razón de que sus nombres aparezcan **por error administrativo** de la C.E.E. aún en las listas de no activos.

Como mencionamos al inicio, todo elector calificado tiene derecho a votar y no se le puede prohibir ejercer tal derecho. Cód. Electoral Art. 6.006, 16 L.P.R.A. Sec. 4066. Permitir que por un error administrativo en las listas I-8, en el día de las elecciones generales un funcionario electoral deniegue **unilateralmente** el derecho

al voto de un elector sin constatar de manera fehaciente su calificación como elector registrado o calificado, constituye tanto una violación al derecho constitucional al voto como al debido proceso de ley de ese elector. Para contrarrestar esa posibilidad, tanto el Código Electoral como el Reglamento para las Elecciones Generales proveen que a los colegios especiales de votos añadidos a mano no les sean suministradas las listas de electores inactivos.

El propósito de establecer el procedimiento del voto añadido a mano es evitar confrontaciones entre los electores y los funcionarios de colegio. Se trata de no abonar, como parece favorecer la mayoría de este Tribunal, más desasosiego y fricción a un ambiente tenso, lo que podría devenir en sucesos violentos durante los comicios electorales.

El derecho de los electores que son víctima de los errores administrativos queda totalmente protegido si se sigue el procedimiento actual establecido por reglamento para los votos añadidos a mano: estos votos se colocan en sobres especiales con la información del elector en la parte externa del sobre y no se cuentan sino hasta comprobar el estatus electoral de la persona que lo emitió. Manual de Procedimiento para las Elecciones Generales, Secs. 14-16.[5]

---

[5] Es infundado el temor a que los electores voten a través del procedimiento de "añadido a mano" sin tener derecho a ello. Los votos añadidos a mano no se cuentan el día de la elección general junto con el resto de los votos de

Así el elector puede ejercer su derecho a pesar del error administrativo y su voto se podrá contabilizar cuando se subsane dicho error. Permitir lo que propone el P.N.P., avalado por la mayoría de esta Curia, equivaldría a brindarles la prerrogativa a los funcionarios de colegio a rechazar el ejercicio al voto de toda aquella persona que sea víctima del error administrativo de la Comisión.

Para atender los argumentos de fraude del P.N.P. sobre la avalancha de electores inactivos que ejercerán un voto sin que haya un filtro que se los prohíba, la propia Resolución de la C.E.E. señala los parámetros en ley que fungen como salvaguarda para tales circunstancias. El mecanismo provisto es que los electores añadidos a mano deben firmar una declaración jurada en la que hagan constar que tienen derecho a votar a pesar de que su nombre no aparece en la lista de votación. Aquéllos que a sabiendas de que no han cumplido con los requisitos para activarse intenten ir a votar a un colegio especial de votos añadidos a mano, enfrentarán el andamiaje jurídico-penal que provee tanto el Código Electoral como el Código Penal de Puerto Rico.

---

electores hábiles, sino que son contabilizados después de ser evaluados por la C.E.E. en un procedimiento de escrutinio general. Manual de Procedimiento para las Elecciones Generales, Secs. 14-16. Por tanto, encontramos infundado y especulativo el alegado temor de la parte peticionaria, cuando **históricamente** se ha probado que este procedimiento provee un mecanismo seguro para evitar el voto doble y el fraude electoral, a la vez que garantiza un debido proceso de ley y el derecho al voto de los puertorriqueños.

**IV**

Como mencioné al inicio, la controversia de autos es sencilla, pues la ley electoral es clara y libre de toda ambigüedad al catalogar a los electores inactivos separadamente de los excluidos. El escenario ante nuestra consideración es que el ordenamiento jurídico electoral vigente provee las salvaguardas adecuadas para proteger el derecho al voto de aquellos electores afectados por los errores administrativos de la C.E.E. Asimismo, el actual Código Electoral faculta que aquellas personas que no tengan derecho a votar no afecten el resultado de aquellos que sí son hábiles para ello.

Es preocupante que a tres días de las elecciones generales del próximo martes la mayoría de esta Curia esté arrojando sombras sobre la pulcritud, transparencia e integridad del proceso electoral. El pueblo de Puerto Rico espera mucho más de aquellos que tenemos la responsabilidad constitucional de velar por el ejercicio de los derechos de la ciudadanía y garantizar el derecho fundamental al sufragio. Con este dictamen pierde la democracia puertorriqueña. Si nosotros como Tribunal no somos capaces de hacer cumplir el texto del Código Electoral y el Reglamento para las Elecciones Generales, nuestra imagen ante el País queda totalmente debilitada.

Anabelle Rodríguez Rodríguez
Juez Asociada
